IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 03–cv–00671–EWN–PAC

TREVOR P. JONES,

      Petitioner,

v.

JOE ORTIZ, Director, Colorado Department of Corrections;
RICK SOARES, Warden, Limon Correctional Facility, Limon, Colorado; and
KEN SALAZAR, Attorney General, State of Colorado,

      Respondents.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is a habeas corpus action filed pursuant to 28 U.S.C. § 2254.  Petitioner Trevor Jones

contends that the Colorado Court of Appeals violated his Sixth and Fourteenth Amendment rights

when it vacated his conviction for reckless manslaughter instead of his conviction for felony

murder.  This matter is before the court on Petitioner's "Objections to the Recommendations and

Proposed Findings of the United States Magistrate Judge," filed May 7, 2004.  Jurisdiction is

based on 28 U.S.C. § 2254.

-1-

# FACTS

### 1.     Factual Background

The facts of this case are undisputed and are set forth more fully in the "Recommendation

of the United States Magistrate Judge," and *People v. Jones*, 990 P.2d 1098, 1102 (Colo. App.

2000), the Colorado Court of Appeals decision in this matter.  Thus, familiarity therewith is

assumed.  I briefly discuss the facts relevant to this habeas petition.

In November 1996, Petitioner agreed to sell a handgun to the victim.  *Id.* at 1101.  Prior

to the sale, Petitioner and a friend decided to retake possession of the gun from the victim "using

some excuse" and then planned to keep both the gun and the money.  *Id.*

> Thereafter, [Petitioner] and his friend met the victim to consummate the
> transaction.  When the two entered the back seat of a vehicle in which the victim
> was a front seat passenger, [Petitioner] sat directly behind the victim.  [Petitioner]
> handed the gun to the victim and received the money.  He then asked the victim to
> return the gun so he could demonstrate how to load it.  When the victim complied,
> [Petitioner] loaded the gun, chambered a round, and told the victim that it was
> 'ready to go.'  Then, still holding the gun, [Petitioner] exited the vehicle,
> approached the front passenger window, and said, 'You better not say anything or
> this'll come back on you.'  The gun then discharged, fatally wounding the victim.

*Id.* at 1101–02.

A Denver District Court jury convicted Petitioner of murder in the first degree (felony

murder), reckless manslaughter, robbery, and conspiracy to commit robbery.  *Jones*, 990 P.2d at

1102.  Defendant was charged with first degree murder after deliberation, but the jury acquitted

him of that charge and instead convicted him of reckless manslaughter.  *Id.*  The trial court

sentenced Petitioner to life in prison without parole for felony murder, six years for reckless

manslaughter, eight years for robbery, and eighteen months for conspiracy to commit robbery,

with all sentences to run concurrently.  *Id.*

## 2.     *Procedural History*

Petitioner appealed his convictions to the Colorado Court of Appeals.  *Id.*  Petitioner

asserted that he could not be convicted of both felony murder and reckless manslaughter for the

same killing.  *Id.*  The Colorado Court of Appeals agreed with Petitioner and vacated the

conviction for reckless manslaughter and the six year sentence on that conviction, and upheld the

conviction for felony murder and the attendant life sentence.  *Id.* at 1108.  The Colorado Court of

Appeals also vacated the robbery conviction because Petitioner could not be convicted of both

felony murder and robbery because robbery, as the predicate felony, is a lesser-included offense of

felony murder.  *Id.* at 1102.

On January 18, 2000, the Colorado Supreme Court denied Petitioner's petition for writ of

certiorari.  (Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [filed Apr. 15, 2003]

[hereinafter "Habeas Pet."], Ex. B [Denial of Pet. for Writ of Certiorari 1/18/00].)  On May 15,

2000, the United States Supreme Court denied Petitioner's request for certiorari review.  (*Id.*, Ex.

C [Denial of Pet. for Writ of Certiorari 5/15/00].)

On December 28, 2000, Petitioner filed a motion in Denver District Court for post-

conviction relief pursuant to Colorado Criminal Procedure Rule 35(c).  (*Id.*, Ex. D [Mot. for

Post-Conviction Relief Pursuant to Crim. P. R. 35(c)].)  Petitioner challenged his convictions on

constitutional grounds.  (*Id.*)  On July 11, 2002, the Colorado Court of Appeals affirmed the trial

court's order denying Petitioner's Rule 35(c) motion.  (*Id.*, Ex. E [Order Affirming Mot. for Post-

Conviction Relief].)  On November 25, 2002, the Colorado Supreme Court denied Petitioner's

request for certiorari.  (*Id.* Ex. F [Order of Supreme Ct. of Colorado].)

On April 15, 2003, Petitioner filed his writ of habeas corpus pursuant to 28 U.S.C. § 2254

directing the Respondents to show cause why he should not be released from custody.  (Habeas

Pet. at 1.)  Petitioner asserts that "his rights to substantive and procedural due process were

violated when the Colorado Court of Appeals vacated his conviction and [six] year prison

sentence for reckless manslaughter and upheld the conviction and life sentence for felony

murder."  (*Id.*)  Respondents argue that the petition should be dismissed because: (1) Petitioner

did not exhaust his state remedies because he did not present his constitutional claims to the state

courts; and (2) the Colorado Court of Appeals resolution of the claims was not contrary to, or an

unreasonable application of, United States Supreme Court case law.  (Answer to Order to Show

Cause at 10–14 [filed July 11, 2003] [hereinafter "Answer"].)

On July 15, 2003, I referred this case to United States Magistrate Judge Patricia Coan.

(Order [filed July 15, 2003].)  On April 21, 2004, the magistrate judge issued her recommendation

regarding Petitioner's petition for writ of habeas corpus.  (Recommendation of United States

Magistrate Judge [filed Apr. 21, 2004] [hereinafter "Magistrate Judge's Recommendation"].)

The magistrate judge recommended that this court find: (1) Petitioner exhausted his

administrative remedies because he raised the substance of his constitutional claims before the

Colorado appellate courts; (2) the language of *Morissette v. United States*, 342 U.S. 246 (1955)

and *Mullaney v. Wilbur*, 421 U.S. 684 (1975), does not support Petitioner's claim that the

Colorado Court of Appeals was required to give effect to Petitioner's reckless manslaughter

conviction because felony murder does not require a mental state with respect to the killing; (3)

neither *Apprendi v. New Jersey*, 530 U.S. 466 (2000) nor *Ring v. Arizona*, 536 U.S. 584 (2002)

are applicable because Petitioner does not claim that his life sentence for felony murder violates

*Apprendi* and *Ring*, but rather that it was improper for the Colorado Court of Appeals to vacate

the reckless manslaughter conviction in lieu of the felony murder conviction; (4) neither *Sullivan*

*v. Louisiana*, 508 U.S. 275 (2002) nor *Duncan v. Louisiana*, 391 U.S. 145 (1968) support

Petitioner's position because Petitioner had a jury trial on all of the criminal charges for which he

was convicted; and (5) *Oklahoma v. Hicks*, 447 U.S. 343 (1980) is inapplicable because under

Colorado law, the Colorado Court of Appeals was entitled to vacate the reckless manslaughter

conviction and uphold the felony murder conviction.  (Magistrate Judge's Recommendation at

5–12.)

      On May 7, 2004, Petitioner filed his objection to the magistrate judge's recommendation.

(Objections to the Recommendation and Proposed Findings of the United States Magistrate Judge

[filed May 7, 2004] [hereinafter "Pet'r's Objections"].)  Petitioner contends that: (1) *Mullaney*

and *Morissette* support his constitutional claims because as Petitioner reads these cases,

"substantive due process requires that any sentence imposed following conviction for a criminal

offense must accurately reflect and properly equate to the degree of the accused's criminal

culpability in order to ensure that substance triumphs over form," (*id.* at 13); (2) *Ring* and

*Apprendi* support his constitutional claims because "substantive due process is concerned, not just

with 'guilt or innocence in the abstract but also with the degree of criminal culpability'   . . . what

is dispositive is the constitutional effect or implication of the State triggering a process that results

in a conviction for a mitigated reckless homicide," (*id.* at 17); (3) *Sullivan* and *Duncan* support

his constitutional claim because these cases illustrate that "his rights to due process and trial by

jury required that the specific jury finding regarding the reckless homicide be given paramount

substantive effect," (*id.* at 18); and (4) the Colorado Court of Appeals did not follow its own

statutory criminal procedures and under *Hicks*, this error must give rise to habeas relief.  (*Id.* at

23.)

## ANALYSIS

### 1.    *Standard of Review*

A district court must conduct a *de novo* review of a magistrate judge's recommendation

on a federal habeas petition.  *Harris v. Taylor*, 250 F.3d 613, 616 (8th Cir. 2001); *see Robbins v.

Hargett*, 3 Fed. Appx. 869, 870 (10th Cir. 2001).  A federal habeas court is bound by a state

court's construction of its criminal laws, except in extreme circumstances not present here.

*Mullaney*, 421 U.S. at 691.  "'[F]ederal habeas corpus relief does not lie for errors of state law.'"

*Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 [1990]).

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on

state-law questions. . . . [A] federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States."  *Id.*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petition

for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on

the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme court
> of the United States; or (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d)(1), (2).  A state-court decision can be "contrary to" a United States

Supreme Court decision in two ways.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  First, a

state-court decision is contrary to United States Supreme Court precedent if the state court

arrives at a "conclusion opposite to that reached by th[e] [Supreme Court] on a question of law.

Second, a state-court decision is also contrary to th[e] [Supreme Court's] precedent if the state

court confronts facts that are materially indistinguishable from relevant Supreme Court precedent

and arrives at" an opposite result.  *Id.*  Essentially, the state-court decision must be "substantially

different from the relevant precedent of" the Supreme Court.  *Id.*

## 2.   *People v. Jones*

As described above, Petitioner appealed his convictions of reckless manslaughter and

felony murder to the Colorado Court of Appeals.  *Jones*, 990 P.2d at 1103–06.  Under

Colorado's homicide provisions, a criminal defendant may only be convicted of one count of

murder for the killing of a single victim.  *People v. Lowe*, 660 P.2d 1261, 1270–71 (Colo. 1983),

*overruled on other grounds by Callis v. People*, 692 P.2d 1045, 1050 n.7 (Colo. 1984); *People v.

Hickam*, 684 P.2d 228, 231 (Colo. 1984).  Here, the Colorado Court of Appeals applied this line

of cases and determined that the two convictions for reckless manslaughter and felony murder

"must be vacated, and only one conviction may enter for homicide."  *Jones*, 990 P.2d at 1102.

The Colorado Court of Appeals vacated Petitioner's reckless manslaughter conviction and affirmed the felony murder conviction. *Id.* at 1103–06.

In arriving at this conclusion, the Colorado Court of Appeals relied on *People v. Glover*, 893 P.2d 1311, 1315 (Colo. 1995) and *People v. Bartowsheski*, 661 P.2d 235, 247 (Colo. 1983). Specifically, "when a defendant has been convicted on two different counts . . . for a single homicide, the convictions should be vacated, and the trial court should be directed to enter as many convictions and impose as many sentences as are legally possible to fully effectuate the jury's verdict." *Glover*, 893 P.2d at 1315. Additionally, the trial court should select "the combination of offenses that produced the most convictions and the longest sentences in order to maximize the effect of the juries' verdicts." *Id.*

Here, the Colorado Court of Appeals concluded that the jury's verdicts were maximized by giving effect to the most serious offense for which Petitioner was convicted and the length of the sentence imposed for that conviction. *Jones*, 990 P.2d at 1102–03. The Colorado Court of Appeals vacated the reckless manslaughter and robbery convictions, which together would have required Petitioner to serve a prison term of eight years, and upheld the conviction for conspiracy to commit robbery and felony murder, which imposed a life sentence without parole. *Id.* at 1103.

**3.      *Petitioner's Objections***

Petitioner contends that the Colorado Court of Appeals decision to vacate his conviction and six year sentence for reckless manslaughter and impose a life sentence without the possibility of parole for the felony murder conviction was erroneous and in violation of his Sixth and Fourteenth Amendment rights. (Pet'r's Objections at 9.) Specifically, Petitioner contends that

-8-

the reckless manslaughter conviction reflected the jury's specific finding that Petitioner acted recklessly in causing the victim's death and due process requires that a criminal conviction reflect the degree of the defendant's criminal culpability. (*Id.* at 13.)  Further, Petitioner contends that "principles of due process in American-Anglo criminal jurisprudence have always favored the offense that includes as an element a *mens rea* over an offense that is strict liability." (*Id.* at 14.)  In support of these arguments, Petitioner asserts that the Colorado Court of Appeals decision was contrary to or an unreasonable application of the following Supreme Court precedent: (1) *Mullaney* and *Morissette*, (2) *Ring* and *Apprendi*, (3) *Sullivan* and *Duncan*, and (4) *Hicks*.  I evaluate each of these cases with respect to Petitioner's position below.

>    **a.      *Mullaney v. Wilbur* and *Morissette v. United States* Do Not Support Petitioner's Position**

Petitioner contends that *Mullaney* and *Morissette* support his constitutional claims because as he reads those cases, "substantive due process requires that any sentence imposed following conviction for a criminal offense must accurately reflect and properly equate to the degree of the accused's criminal culpability in order to ensure that substance triumphs over form." (Pet'r's Objections at 13.)  Specifically, Petitioner contends that the *Mullaney* and *Morissette* courts noted "the direct due process connection between the 'mental element of the crime' with the 'degree of the offense or its punishment.'" (*Id.*)

In *Mullaney*, the Supreme Court invalidated a Maine statute that required a defendant charged with murder to prove that he acted "in the heat of passion on sudden provocation" in order to obtain a manslaughter conviction. *Mullaney*, 421 U.S. at 697–98.  Maine's statute

placed the burden on the defendant to prove that he acted in the heat of passion on sudden

provocation. *Id.* at 692. The Supreme Court determined that:

> Maine, like that of other jurisdictions, is concerned not only with guilt or
> innocence in the abstract but also with the degree of criminal culpability. Maine
> has chosen to distinguish those who kill in the heat of passion from those who kill
> in the absence of this factor. Because the former are less blameworthy . . . they are
> subject to substantially less severe penalties. By drawing this distinction, while
> refusing to require the prosecution to establish beyond a reasonable doubt the fact
> upon which it turns, Maine denigrates the interests found critical in [*In re*] *Winship*
> . . .

*Id.* at 697–98. The instant case is not analogous nor is Petitioner's sentence an unreasonable

application of *Mullaney*. Here, Petitioner does not dispute the jury's determination that he was

guilty of each element of felony murder and that the prosecution proved this beyond a reasonable

doubt. Thus, the issues presented in *Mullaney* are not applicable in the instant case.

Additionally, *Morissette* is not analogous. In *Morissette*, the Supreme Court held that

criminal intent is an essential element of the federal offense of knowing conversion of government

property, despite the fact that Congress did not express a criminal intent element in the statute.

*Morissette*, 342 U.S. at 275. The Court determined that where "intent is an ingredient of the

crime charged, its existence is a question of fact which must be submitted to the jury." *Id.* at 274.

 Indeed, the Court held that "[h]owever clear the proof may be, or however inconstrovertible may

seem to the judge to be the inference of a criminal intention, the question of intent can never be

ruled as a question of law, but must always be submitted to the jury." *Id.* Here, unlike

*Morissette*, the felony murder issue was submitted to the jury. The jury adequately considered

Petitioner's mental state to commit the underlying felony for the felony murder conviction. *Jones*,

-10-

990 P.2d at 1102–05.  Accordingly, the Colorado Court of Appeals decision was not an unreasonable application of either *Mullaney* or *Morissette*.

Indeed, Petitioner does not precisely explain how the Colorado Court of Appeals decision was contrary to or an unreasonable application of either *Mullaney* or *Morissette*.  Instead, Petitioner simply relies on a spattering of various quotes from both of these cases and asserts that "[d]ue process principles . . . set out in *Mullaney* and *Morissette*, require that any conviction for a criminal offense accurately reflect the degree of the accused's criminal culpability to ensure that substance triumphs over form."  (Pet'r's Objections at 15.)  As demonstrated above, the jury in Petitioner's case had occasion to consider the felony murder charge and found Petitioner guilty beyond a reasonable doubt.  *Jones*, 990 P.2d at 1102–05.  Thus, even assuming Petitioner's interpretation of these cases is correct, the conviction in this case accurately reflects the degree of Petitioner's criminal culpability.

Further, Petitioner contends that the Colorado Court of Appeals decision was an unreasonable application of *Mullaney* and *Morissette* because "American-Anglo criminal jurisprudence have [sic] always favored the offense that includes as an element a *mens rea* over an offense that is strict liability."  (Pet'r's Objections at 14.)  In relying on language from *Mullaney*, Petitioner contends "the unassailable principle that, with reference to *mens rea*, due process requires a defendant to be held liable to the actual degree of his culpability; that is, that due process requires that substance must triumph over form when it comes to resolving the extent of a defendant's criminal liability."  (*Id.*)  Petitioner ignores that the United States Supreme Court has upheld the constitutionality of state felony murder statutes.  *See Lockett v. Ohio*, 438 U.S. 586,

602 (1978) ("That States have authority to . . . enact felony-murder statutes is beyond constitutional challenge."); *Hopkins v. Reeves*, 524 U.S. 88, 91–92 (1998) (when proceeding on a felony murder theory, "prosecutors do not need to prove a culpable mental state with respect to the murder because intent to kill is conclusively presumed if the State proves intent to commit the underlying felony."). Here, the prosecution conclusively proved that Petitioner committed the robbery beyond a reasonable doubt. Thus, Petitioner's argument that the Colorado Court of Appeals was required to give effect to his reckless manslaughter conviction because there the jury made an affirmative decision regarding Petitioner's mental state is unavailing. Petitioner's culpable mental state with respect to murder is conclusively presumed because prosecutors proved Petitioner's intent to commit the underlying robbery. *See Hopkins*, 524 U.S. at 91–92.

> **b.**   ***Ring v. Arizona and Apprendi v. New Jersey Do Not Support Petitioner's Position***

Petitioner contends "[u]nder *Ring* and *Apprendi*, the Court held that when a state makes an increase in a defendant's sentence contingent upon the finding of a fact, it must be found by a jury beyond a reasonable doubt." (Pet'r's Objections at 16.) Here, the Colorado Court of Appeals decision was not an unreasonable application of *Ring* or *Apprendi*.

In *Apprendi*, the United States Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Following *Apprendi*, the Supreme Court in *Ring* invalidated an Arizona statute which authorized the trial judge to make factual findings on aggravating factors which potentially enhance a criminal defendant's penalty in

a capital case. *Ring*, 536 U.S. at 605–07.  The *Ring* Court determined that the Arizona statute

was unconstitutional:

> to the extent that it allows a sentencing judge, sitting without a jury, to find an
> aggravating circumstance necessary for imposition of the death penalty.  Because
> Arizona's enumerated aggravating factors operate as 'the functional equivalent of
> an element of a greater offense,' the Sixth Amendment requires that they be found
> by a jury.

*Id.* at 609.  The instant case is not analogous to *Apprendi* or *Ring* because the Colorado Court of

Appeals did not make any factual findings with respect to an increased sentence or conviction for

a greater offense.  The jury convicted Petitioner of first degree felony murder, reckless

manslaughter, robbery, and conspiracy to commit robbery.  (Magistrate Judge's Recommendation

at 1.)  Petitioner was sentenced to life imprisonment without parole for felony murder, six years

for reckless manslaughter, eight years for robbery, and eighteen months for conspiracy to commit

robbery, with all sentences to run concurrently.  *Jones*, 990 P.2d at 1102.  Thus, the Colorado

Court of Appeals did not make any findings that enhanced Petitioner's convictions, nor did the

Court of Appeals impose any greater sentence.  The Colorado Court of Appeals simply gave

effect to the most serious offense for which Petitioner was convicted.  Indeed, Petitioner's

reliance on *Apprendi* and *Ring* is disingenuous.  Petitioner does not challenge his felony murder

conviction, yet continues to argue that he was not afforded a trial by jury on the charge for which

he was sentenced to life in prison.  Accordingly, the Colorado Court of Appeals decision was not

contrary to or an unreasonable application of *Apprendi* or *Ring*.

c.       *Sullivan v. Louisiana and Duncan v. Louisiana Do Not Support Petitioner's Position*

Next, Petitioner contends that the Colorado Court of Appeals violated his substantive due process and "trial by jury" rights "when [it] threw out the solemn and substantive jury verdict." (Pet'r's Objections at 19.)  In support, Petitioner contends that *Sullivan* and *Duncan* "hold that the right to a trial by jury is fundamental to the American scheme of justice." (*Id.*)  Petitioner contends that "[t]he Sixth Amendment does not permit a defendant to be exposed to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." (*Id.*)  More specifically, Petitioner argues that:

> [t]he sanctity and reality of the manslaughter verdict, representing as it did the specific and particularized finding of the jury regarding [Petitioner's] conduct and culpability in the killing of the victim, should not have been vacated and the applicable sentencing statutes given no effect under the Trial by Jury and Due Process Clauses.

(*Id.*)

Based solely on the aforementioned arguments, Petitioner's reliance on *Sullivan* or *Duncan* is misplaced.  Petitioner completely ignores the fact that he was afforded a jury trial on all the criminal charges of which he was convicted.  *Jones*, 990 P.2d at 1102.  The jury found that Petitioner acted "knowingly" in committing the robbery.  *Id.*  Additionally, the jury determined that the death of the victim "occurred in the course of, in furtherance of, the robbery, or in immediate flight therefrom." *Id.* at 1104.  Thus, the Colorado Court of Appeals gave effect to the jury's findings on this charge.  Moreover, as stated above, the prosecutors did not need to prove a culpable mental state with respect to the murder because they established conclusively that

-14-

Petitioner had the requisite mental state to commit the underlying felony.  *See Hopkins*, 524 U.S. at 91–92.  Accordingly, Petitioner's reliance on *Sullivan* and *Duncan* is misplaced and the Colorado Court of Appeals decision was not an unreasonable application of *Sullivan* or *Duncan*.

      **d.**      ***Oklahoma v. Hicks Does Not Support Petitioner's Position***

Finally, Petitioner contends that the Colorado Court of Appeals decision was contrary to and an unreasonable application of *Hicks*.  Specifically, Petitioner relies on *Hicks* for the proposition that he has the right to have the jury "fix his punishment in the first instance, and that right was denied."  (Pet'r's Objections at 22.)  In *Hicks*, the Supreme court determined that Oklahoma deprived the petitioner of his due process rights when the state appellate court affirmed the sentence imposed by the jury under an invalid criminal statute.  *Hicks*, 447 U.S. at 346–47.  The petitioner in *Hicks* received a forty year prison sentence under the Oklahoma habitual offender statute.  *Id.* at 345.  Subsequently, the Oklahoma Court of Criminal Appeals declared the statute unconstitutional.  *Id.*  On appeal by the petitioner, the Court of Criminal Appeals acknowledged that the provision was unconstitutional, but nonetheless affirmed the petitioner's conviction and sentence.  *Id.*  The Court of Criminal Appeals reasoned that the petitioner was not prejudiced because the sentence was within the range of punishment that could have been imposed in any event.  *Id.*  The Supreme Court reversed this decision and held that the petitioner "has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion . . ."  *Id.* at 346.

The Colorado Court of Appeals decision in the instant case was not contrary to or an unreasonable application of *Hicks*.  Here, the jury convicted Petitioner under a valid Colorado

felony murder statute.  Indeed, Petitioner does not challenge this conviction.  Rather, Petitioner

contends that under *Hicks* "[t]he applicable statutory sentencing provision per the jury's reckless

manslaughter verdict cannot be given no effect because of a state appellate court's desire for mere

quantity . . ."  (Pet'r's Objections at 25.)  Ironically, Petitioner's argument applies with equal

force to the felony murder conviction.  Were the court to accept Petitioner's argument as to this

point, the court would be giving the jury's felony murder verdict "no effect."  Again, Petitioner

completely ignores the fact that the jury convicted him of reckless manslaughter and felony

murder.  Petitioner does not provide any support for his argument that this court must vacate the

felony murder conviction in favor of the reckless manslaughter conviction.  As described above,

*Hicks* does not provide support for this proposition.  Accordingly, the Colorado Court of Appeals

decision is not contrary to or an unreasonable application of United States Supreme Court

precedent.

## 4. *Conclusions*

Based on the foregoing, it is ORDERED as follows:

1. The magistrate judge's recommendation (# 20) is ACCEPTED.

2. The clerk shall forthwith enter judgment in favor of Respondents and against

Petitioner, dismissing all claims with prejudice.

3.      The hearing scheduled for April 20, 2006, is VACATED.

Dated this 20th day of April, 2006.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge